IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERNARD CROCKETT (R55945), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 13 C 9231 |
| v. ) | |
| ) | |
| RICK HARRINGTON, Warden, ) | |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Vernard Crockett's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Crockett's habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

Crockett does not present clear and convincing evidence challenging the statement of facts in the last state court decisions addressing his arguments on the merits, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Ford v. Wilson,* 747 F.3d 944, 947 (7th Cir. 2014). The Court therefore adopts the underlying facts as set forth by the Illinois Appellate Court, First District, in *People v. Crockett,* No. 1-10-3685 (1st Dist. Sept. 28, 2012) (unpublished), and *People v. Crockett,* No. 1-10-3685 (1st Dist. July 17, 2009) (unpublished).

### I. Factual Background

On January 20, 2004, Jazmine Robinson's mother found her shot to death in their basement. On January 22, 2004, an anonymous caller notified police about the Robinson murder

after which the police interviewed Ronald Lamar leading to first-degree murder charges against Crockett and Lamar. The evidence at Crockett's September 2006 jury trial established that Crockett and Lamar were involved in the shooting death of Robinson, who was Crockett's girlfriend. Lamar pleaded guilty, but refused to testify against Crockett at the September 2006 jury trial.

Prior to his jury trial, Crockett offered two inconsistent alibis to police. Thereafter, Crockett provided three substantially consistent police statements in which he admitted to arranging the robbery of Robinson because Lamar wanted to "hit a lick," namely, rob someone. In his statements, Crockett said he was aware that Lamar carried a handgun and believed that Robinson would not release the $650 that he knew she had unless they threatened her with a weapon. Further, Crockett offered to set up the robbery — they would go to Robinson's home to look at results of her pregnancy test. According to Crockett's statements, Lamar and he had agreed upon a signal to begin the armed robbery. More specifically, they would proceed to Robinson's basement and Crockett would wink at Lamar.

In one of his statements, Crockett said he told Lamar to bring the gun as a threat, but not to use it to hurt Robinson. Crockett further stated that he examined Lamar's gun, a black .380 semi-automatic, on the Sunday prior to the arranged robbery. In addition, Crockett stated that he accompanied Lamar to Lamar's house to pick up the gun, after which they proceeded to Robinson's home on Tuesday, January 20, 2004.

While at Robinson's home, Crockett requested something to drink and Robinson poured him a glass of Bacardi. When the group went into the basement, Crockett put the glass on a freezer and asked Robinson to retrieve a compact disk. Robinson complied and, upon her return,

2

she turned music, "up real loud." Crockett then gave Lamar the signal to begin the robbery. Lamar asked Robinson where the money was, after which Robinson turned toward Crockett and looked at him. Lamar continued to demand money and then shot Robinson in the back. At that point, Crockett fled from Robinson's home. While fleeing, Crockett heard three or four more shots. Crockett, however, did not report the shooting to the police.

Crockett testified at his jury trial denying that he arranged the robbery. Specifically, he testified that his girlfriend called him asking him to come over to her house to look at the results of a pregnancy test. He further testified that he encountered Lamar while on the way to Robinson's house and invited Lamar to walk with him. Upon their arrival, Lamar and Crockett entered Robinson's home and Crockett requested something to drink. The group settled into the basement and Robinson gave Crockett a glass of Bacardi, which he set down on top of a freezer. Crockett asked Robinson to retrieve a compact disk, which she did. Then, Lamar produced a handgun. Crockett testified that — up until that point — he was unaware that Lamar had a gun. According to Crockett's trial testimony, Robinson was uncomfortable with the presence of the handgun and told Lamar to leave while threatening to call the police. Further, Crockett testified that when Lamar failed to comply, they engaged in a heated verbal exchange. Crockett stated that at some point Robinson approached Lamar and pushed him from behind. In response, Lamar pushed Robinson to the ground and shot her once. Crockett immediately fled the home and heard three or four gunshots while running away. At trial, Crockett admitted that he did not report the shooting incident, but claimed that it was out of fear for his and his family's safety.

At trial, forensic testimony revealed that .380 caliber cartridge cases from fired bullets were recovered around Robinson's body. The cartridge cases were fired from the same

semi-automatic weapon although the police never recovered the gun. Investigators also recovered a bottle of Bacardi in the kitchen refrigerator and a glass on the freezer chest in the basement. They also found a positive home pregnancy test in a dresser drawer in Robinson's bedroom.

## II.     Procedural Background

On September 27, 2006, following a trial in the Circuit Court of Cook County, Illinois, the jury found Crockett guilty of first-degree murder and attempted armed robbery. The Circuit Court judge sentenced Crockett to a term of 42 years imprisonment for the first-degree murder conviction to run consecutively to a 10 year-term for the attempted robbery.

Crockett then filed an appeal to the Illinois Appellate Court, First District, arguing that: (1) the State failed to establish the *corpus delicti* of attempted armed robbery where his statement was the only evidence presented; (2) the trial court's admission of a detective's testimony violated his Sixth Amendment right to confrontation denying him a fair trial; and (3) the trial court considered improper factors at sentencing. The Illinois Appellate Court agreed to the first argument and reversed Crockett's attempted armed robbery charge. Further, the Illinois Appellate Court held that the detective's testimony was properly admitted as non-hearsay evidence because it concerned a police investigatory procedure. The Illinois Appellate Court also affirmed Crockett's murder conviction, but remanded for resentencing because the court was unsure whether the improper attempted armed robbery conviction influenced the murder sentence. The State filed a petition for leave to appeal ("PLA") that the Supreme Court of Illinois denied on November 25, 2009. Upon remand, the Circuit Court judge sentenced Crockett to 42 years in prison for the first-degree murder conviction.

Crockett then appealed to the Illinois Appellate Court, First District, for a second time arguing that: (1) insufficient evidence supported his first-degree murder conviction; (2) the trial court's admission of a detective's testimony that was hearsay evidence violated his Sixth Amendment right to confrontation denying him a fair trial; and (3) the trial court erred in failing to reduce his sentence on remand. On September 28, 2012, the Illinois Appellate Court affirmed concluding that: (1) Crockett waived his sufficiency of the evidence claim; (2) the law of the case doctrine barred his confrontation clause claim; and (3) the Circuit Court judge did not abuse its sentencing discretion. Thereafter, Crockett filed a PLA to the Supreme Court of Illinois arguing that: (1) the Illinois Appellate Court erroneously concluded that he waived his sufficiency of the evidence claim; and (2) the detective's testimony constituted hearsay that violated his Sixth Amendment right to confrontation and denied him a fair trial. On January 30, 2013, the Supreme Court of Illinois denied Crockett's PLA.

Crockett did not petition the United States Supreme Court for a writ of certiorari following the Supreme Court of Illinois' denial of his PLA. Also, Crockett did not file a pro se post-conviction petition pursuant to 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County. The parties do not dispute that Crockett has exhausted his state court remedies.

**III.    Habeas Petition**

Construing Crockett's pro se allegations in his habeas petition liberally, *see Turley v. Rednour,* 729 F.3d 645, 651 (7th Cir. 2013), he brings the following claims: (1) there was insufficient evidence to support his first-degree murder conviction; and (2) a detective's testimony regarding out-of-court statements violated his Sixth Amendment right to confrontation denying him a fair trial.

5

## LEGAL STANDARDS

### I. Habeas Relief

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Ruhl v. Hardy,* 743 F.3d 1083, 1091 (7th Cir. 2014). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405; *see also Kamlager v. Pollard,* 715 F.3d 1010, 1015 (7th Cir. 2013) ("A state court decision is 'contrary to' federal law if it applies the wrong legal standard established by Supreme Court precedent or decides a case differently than the Supreme Court on materially indistinguishable facts.").

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407. "The state court's application of federal law must not only be incorrect, but 'objectively unreasonable.'" *Rann v. Atchison,* 689 F.3d 832, 835 (7th Cir. 2012); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Kamlager,* 715

6

F.3d at 1016 (citation omitted). In other words, to be objectively reasonable, the state court's decision must be "at least minimally consistent with the facts and circumstances of the case." *Hall v. Zenk,* 692 F.3d 793, 798 (7th Cir. 2012) (citation omitted).

## II. Exhaustion and Procedural Default

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), 'thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Mulero v. Thompson,* 668 F.3d 529, 536 (7th Cir. 2012). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009). A claim is also procedurally defaulted "when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell,* 556 U.S. 449, 465, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero,* 668 F.3d at 536.

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct.

7

2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Weddington v. Zatecky,* 721 F.3d 456, 465 (7th Cir. 2013). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## ANALYSIS

I. **Sufficiency of the Evidence Claim**

Crockett's first claim, namely, that there was insufficient evidence to support his first-degree murder conviction based on *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is procedurally defaulted because the Illinois Appellate Court rejected this argument on independent and adequate state law grounds. "When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Richardson v. Lemke,* 745 F.3d 258, 268 (7th Cir. 2014).

To clarify, Crockett failed to raise this claim in his first appeal to the Illinois Appellate Court, and thus on his second appeal after remand, the Illinois Appellate Court found that he had waived the issue. *See People v. Crockett,* No. 1-10-3685, 2012 WL 6953467, at *4 (1st Dist. Sept. 28, 2012) (unpublished) ("We, therefore, conclude that defendant waived his ability to

challenge his murder conviction by failing to raise it in his initial appeal."). In other words, the Illinois Appellate Court relied on Illinois procedural law that when a defendant fails to raise an issue in his initial appeal and then attempts to raise it for the first time in his second appeal, his argument is waived. *See People v. Young,* 152 Ill.App.3d 361, 365, 504 N.E.2d 115, 118, 105 Ill.Dec. 246, 249 (1st Dist. 1987).

In his reply brief, Crockett argues that Illinois courts do not regularly follow the state procedural rule relied upon by the Illinois Appellate Court. *See Richardson,* 745 F.3d at 271 ("For a procedural default to be considered an adequate state law ground, the rule under which it is invoked must have been firmly established and regularly followed as of the time when the procedural default occurred."). Because the Supreme Court of Illinois has clarified that the term "forfeited" should be used when discussing "issues that could have been raised, but were not, and are therefore barred," *see People v. Blair,* 215 Ill.2d 427, 444, 831 N.E.2d 604, 615, 294 Ill.Dec. 654, 665 (2005), the Court looks to Illinois law on forfeiture in addressing Crockett's argument. *See Hogan v. McBride,* 74 F.3d 144, 146 (7th Cir. 1996) ("Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court."). Contrary to Crockett's assertion, Illinois courts regularly follow the rule that a party may not raise a claim in a second direct appeal if it could have been raised in the first appeal. *See, e.g., Village of Ringwood v. Foster,* 986 N.E.2d 662, 671, 369 Ill.Dec. 349, 358 (2d Dist. 2013); *Anest v. Bailey,* 265 Ill.App.3d 58, 62, 637 N.E.2d 1209, 202 Ill.Dec. 473, 477 (2d Dist. 1994); *Behrstock v. Ace Hose & Rubber Co.,* 147 Ill.App.3d 76, 82, 496 N.E.2d 1024, 1028, 99 Ill.Dec. 932, 936 (1st Dist. 1986); *see also People ex rel. Madigan v. Illinois Commerce Com'n,* 967

9

N.E.2d 863, 871, 359 Ill.Dec. 833, 841 (2d Dist. 2012) (when an appellate court reverses a judgment and remands the cause with a specific mandate, the only proper issue on a second appeal is whether the trial court's order on remand is in accord with the mandate"). Moreover, Crockett's argument based on an appellate court decision implying that a defendant could file new claims in a second appeal is factually distinguishable and does not render Illinois' forfeiture rule inadequate for procedural default purposes. *See Miranda v. Leibach,* 394 F.3d 984, 996 (7th Cir. 2005) ("inconsistencies in the application of the waiver rule will" do not make the "rule inadequate for purposes of the procedural default inquiry.").

Crockett also argues that his actual innocence excepts his procedural default of his sufficiency of the evidence claim. As the Supreme Court teaches "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). "The fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Smith v. McKee,* 598 F.3d 374, 387-88 (7th Cir. 2010) (quoting *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). A habeas petitioner must support his actual innocence allegations "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324. "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have

documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005). Because this type of evidence is unavailable in the vast majority of cases, actual innocence claims are rarely successful. *See Schlup,* 513 U.S. at 324; *Smith,* 598 F.3d at 387-88.

Here, Crockett has failed to set forth any new evidence, whether reliable or not, that was not presented at his criminal trial to support his actual innocence claim. Instead, Crockett argues that the "facts of this case clearly establish that the Petitioner is actually innocent." (R. 18, Reply, at 8.) Without more, Crockett cannot establish that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup,* 513 U.S. at 327. Accordingly, the Court cannot reach the merits of Crockett's first habeas claim because it is procedurally defaulted. *See Bolton v. Akpore,* 730 F.3d 685, 696 (7th Cir. 2013).

## II. Confrontation Clause Claim

Similarly, Crockett has procedurally defaulted his second habeas claim, namely, that a detective's testimony regarding out-of-court statements violated his confrontation clause rights under the Sixth Amendment and denied him a fair trial, *see Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), because he did not present this argument through one full round of state court review. *See Boerckel,* 526 U.S. at 845 ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). As discussed above, one full round of state court review in Illinois includes the Supreme Court of Illinois' discretionary review pursuant to a PLA. *See id.*; *see also Coleman v. Lemke,* 739 F.3d 342, 347
11

(7th Cir. 2014).

Here, Crockett raised this claim on his first appeal to the Illinois Appellate Court, but did not raise it in his first PLA to the Supreme Court of Illinois, and thus did not present this claim for one complete round of state court review. *See Bolton,* 730 F.3d at 696. Although Crockett raised this claim in his second appeal and in his second PLA to the Supreme Court of Illinois, the Illinois Appellate Court on the second appeal denied this claim based on the law of the case doctrine, which is not a decision on the merits. *Cf. Peoples v. United States,* 403 F.3d 844, 847 (7th Cir. 2005); *see also People v. McNair,* 138 Ill.App.3d 920, 922, 486 N.E.2d 941, 943, 93 Ill.Dec. 408, 410 (5th Dist. 1985) ("Under the long-established 'law of the case' doctrine, a determination of an issue on its merits by an appellate court is final and conclusive upon the parties in a second appeal in the same case, and the issues considered and decided cannot be reconsidered by the same court except on a petition for rehearing."). Therefore, the first Illinois Appellate Court decision that the detective's testimony was properly admitted as non-hearsay evidence is the relevant state court decision for habeas purposes because the appellate court reviewed the actual merits of Crockett's claim. *See Sutherland v. Gaetz,* 581 F.3d 614, 616 (7th Cir. 2009) (citing 28 U.S.C. § 2254(d)). And, as discussed, Crockett did not raise this issue to the Supreme Court of Illinois in his first PLA, thereby procedurally defaulting this claim.

Again, Crockett argues that his actual innocence excepts his procedural default to his second habeas claim. Crockett, however, has failed to present any evidence — let alone new, reliable evidence — for the Court to consider his actual innocence claim under the *Schlup* standard. Because Crockett has procedurally defaulted this claim, the Court cannot reach its merits. *See Bolton,* 730 F.3d at 696.

**III.    Certificate of Appealability**

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Crockett a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Bolton,* 730 F.3d at 697. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Thomas v. Zatecky,* 712 F.3d 1004, 1006 (7th Cir. 2013); 28 U.S.C. § 2253(c)(2). Under this standard, Crockett must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In cases where a district court denies a habeas claim on procedural grounds, a certificate of appealability should issue only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

Here, reasonable jurists would not conclude that the Court erred in finding that Crockett had procedurally defaulted his habeas claims. *See id.* ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Therefore, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Crockett's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** June 5, 2014

              **ENTERED**

              */s/ Amy J. St. Eve*
              **AMY J. ST. EVE**
              **United States District Judge**